# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNITA FAISON, individually and as a representative of all others similarly situated, | Case No. |
| Plaintiff, | JUDGE |
| v. | **CLASS ACTION COMPLAINT** |
| WALMART INC. | **DEMAND FOR JURY TRIAL** |
| and | |
| WAL-MART STORES, INC. | |
| Defendants. | |

Plaintiff Vernita Faison, individually and on behalf of all others similarly situated, through her undersigned counsel, alleges as follows against Defendants Walmart Inc. and Wal-Mart Stores, Inc. ("Walmart"), based upon personal knowledge as to herself and, as to all other matters, upon information and belief, including their counsel's investigation.[1]

---

[1] Plaintiff Faison previously filed a class action complaint for the conduct alleged herein in the United States District Court for the Northern District of Illinois on August 10, 2023, *Arnesia Thomas et al. v. Walmart Inc. et al.*, Case No. 23 CV 5315 (N.D. Ill.) (amended on November 6, 2023). On March 11, 2024, Judge Jeremy C. Daniel granted in part and denied in part Walmart's motion to dismiss, dismissing Plaintiff Faison's claims because the court found it lacked personal jurisdiction over defendants with respect to those claims, and dismissing plaintiffs' claims for injunctive relief for lack of standing based on allegations unique to that case, but otherwise denying the motion as to all other claims, *i.e.*, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of express warranty, common law fraud, negligent misrepresentation, and unjust enrichment. Dkt. 37, *Thomas v. Walmart Inc.*, No. 23 CV 5315 (N.D. Ill. Mar. 11, 2024).

## INTRODUCTION

1.  Walmart is the world's largest retailer[2] and operates "approximately 10,500 stores and clubs under 46 banners in 24 countries . . . . and employs 2.3 million associates worldwide,"[3] including approximately 1.6 million in the United States.[4] In the United States alone, Walmart operates 4,684 stores.[5]

2.  Walmart manufactures, labels, distributes, advertises, and sells bed sheet sets under its exclusively owned brand name "Hotel Style" at Walmart locations throughout the country. The Hotel Style sheets that are the subject of this suit are made using a cotton and polyester blended fabric and are advertised as 800 thread count[6] (hereinafter "Hotel Style Sheets" or "Products").[7] These Hotel Style Sheets are sold in Full, Queen, and King sizes and in a number of different colors and/or patterns. However, no matter the size, color, or pattern, all of the Hotel Style Sheets are made from a cotton and polyester blended fabric. Walmart represents directly on the Hotel Style Sheets' packaging and/or labeling that their thread count is 800. The packaging and labeling of the Hotel Style Sheets are

---

[2] *Top 100 Retailers 2023 List*, Nat'l Retail Fed'n, https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2023-list (last visited March 22, 2024).

[3] *Walmart's 9th Annual Open Call Application Period is Open for All Entrepreneurs with Products Made, Grown or Assembled in the U.S.*, Walmart (Mar. 14, 2022), https://corporate.walmart.com/newsroom/2022/03/14/walmarts-9th-annual-open-call-application-period-is-open-for-all-entrepreneurs-with-products-made-grown-or-assembled-in-the-u-s (last visited March 22, 2024).

[4] *How many people work at Walmart?*, Walmart, https://corporate.walmart.com/askwalmart/how-many-people-work-at-walmart (last visited March 22, 2024).

[5] *Id.*

[6] "Thread count" refers to the total number of yarns in one square inch of fabric.

[7] Walmart also sells Hotel Style sheets advertised with different thread counts. Plaintiff does not allege claims stemming from Walmart's sales of such sheets.

---

CLASS ACTION COMPLAINT                                                    Page - 2 -

1    uniform and contain the same representations and warranties, including the 800 thread count

2    representation, no matter the size, color, or pattern of the Hotel Style Sheets. For example:



19        3.   Walmart prominently and uniformly represents and warrants on the front of its packaging

20    of the Hotel Style Sheets that the sheets are "800 THREAD COUNT." This representation and

21    warranty are made in the largest font found anywhere on the Hotel Style Sheets' packaging and

22    labeling.

23

4.   A reasonable consumer will believe that a set of bed sheets which represent on the label and packaging that they are 800 thread count will actually include a set of bed sheets with a thread count of 800 according to an honest count, consistent with accepted industry standards.

5.   Inaccurate thread counts also create reasonable but mistaken beliefs by consumers about the quality, durability, and longevity of sheet sets and fabrics. Specifically, consumers will believe that the 800 thread count sheets are of a higher quality than lower thread count sheet sets.[8] Retailers and manufacturers of bedding sheet sets, including Walmart, commonly and consistently communicate to consumers that higher thread count bed sheets are softer, more comfortable, and of an overall higher quality than those with a lower thread count. For example, Walmart claims that its Hotel Style Sheets are "super-soft and comfortable," "bring[] night after night of peaceful comfort" and that they "provide[] exceptional softness for a calming night's sleep."[9]

6.   Consumers regularly and commonly rely on the representations made on a product's labeling and packaging when determining whether or not to purchase that product. When purchasing sheet sets, consumers use the product's thread count as a primary indicator of their quality, durability, and softness and pay higher prices for those with higher thread counts.

---

[8] *See* P. Praditbatuga & N. Thirakomen, *Factors Influencing Consumer Purchase Intention Towards Imported Bedding Brands*, 3 eJournal of Interdisciplinary Rsch. 235, 239 (2018), http://www.assumptionjournal.au.edu/index.php/eJIR/article/view/4180/2469 ("respondents strongly agreed that all the attributes of imported bedding brands in this study (price, color, style, brand name, fiber content, package set, fabric type, and ***thread count***) were important to their decision to purchase imported bedding brands" (emphasis added)); *see also* Jackie Reeve, *What Is a Good Thread Count for Sheets?*, N.Y. Times (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/ (Shannon Maher, chairperson and assistant professor of Home Products Development department at the Fashion Institute of Technology, stated manufacturers increase thread count because consumers assume higher thread count is better).

[9] *Hotel Style 800 Thread Count Cotton Rich Sateen Bed Sheet Set, King, Gray, Set of 6*, Walmart, https://www.walmart.com/ip/Hotel-Style-800-Thread-Count-Cotton-Rich-Sateen-Bed-Sheet-Set-Queen-White-Set-of-6/875488965 (last visited Apr. 2, 2024).

---

1    7.  In an effort to make the Hotel Style Sheets more attractive in the marketplace, to boost its

2    sales, and to increase its profits, Walmart represented, and continues to represent, an inflated thread

3    count of 800 directly on its Hotel Style Sheets' label and packaging. In doing so, Walmart departed

4    from longstanding and well-established industry standards that govern the method for counting threads

5    in a fabric. In reality, expert testing, conducted pursuant to the industry accepted methodology

6    contained in the American Society for Testing and Materials-International ("ASTM") Standard Test

7    Method for End (Warp) and Pick (Filling) Count of Woven Fabrics, D3775-17,[10] reveals that the

8    thread count of Walmart's Hotel Style Sheets is less than half of the represented and warranted 800

9    thread count.

10    8.  This false and misleading representation deceives consumers into believing they are

11    purchasing a product of a higher quality, durability, and softness than products of the same or

12    substantially similar blends with lower thread counts.

13    9.  Because of the improperly inflated thread counts that Walmart represented on the

14    packaging and labeling of the Hotel Style Sheets, in purchasing these sheets, Plaintiff and the putative

15    class received far less than what Walmart promised them.

16    10. Moreover, as a direct result of Walmart's deceptive and unconscionable misrepresentation

17    of its Hotel Style Sheets' thread count, Plaintiff and putative class members were induced to purchase

18    the Hotel Style Sheets and would not have purchased them, or would have paid a lower price for them,

19    had they known the actual thread count at the time of purchase.

20

21

22

23

[10] The designation "ASTM D3775-17" means that the standard was adopted in the year 2017.

**PARTIES**

11.     Plaintiff Vernita Faison is a California citizen who, at all times material hereto, was a resident of Sacramento, California. As discussed in more detail in Paragraphs 52-54, in or around February 2022, while a resident of Sacramento, California, Ms. Faison purchased Hotel Style Sheets from a local Walmart location for approximately $59 based on Walmart's representation of its thread count as 800. The Hotel Style Sheets purchased by Plaintiff Faison includes a tag affixed to the sheets that identifies them as Walmart's "Hotel Style" brand, identifies that they are "Queen" sized sheets, and states that they were made from a 53% cotton and 47% polyester blended fabric. Further, the product's packaging and labeling represent and warrant that the sheets have an 800 thread count. Plaintiff Faison would not have purchased the sheets, or alternatively would not have paid a premium for them, had Walmart not made this misrepresentation.

12.     Plaintiff is an average consumer, with no expertise in counting threads of bedsheets, and, thus, is at risk of reasonably, but incorrectly, assuming in the future that Walmart has fixed the thread count representation made on its Hotel Style Sheets or has changed its manufacturing process such that its thread count representation is now correct. Indeed, Plaintiff still desires to buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the future if she believed that Walmart's thread count representations were true. Indeed, if Walmart were to correct its thread count misrepresentation, such as by manufacturing the product in a way that would make the 800 thread count representation true, then Plaintiff would purchase the Hotel Style Sheets in the future. Plaintiff is at risk of future harm because of her inability to rely on the validity of the thread count representation on the Hotel Style Sheets' packaging with any confidence on a going forward basis—despite her desire to purchase bedsheets that contain an 800 thread count.

13.     Defendants Walmart Inc. and Wal-Mart Stores, Inc. (collectively, "Walmart") are corporations organized under the laws of the State of Delaware. Their principal places of business are each located in Bentonville, Arkansas. Walmart is in the business of, among other things, marketing and selling home goods, including the at-issue Hotel Style Sheets, to consumers across the United States, including in California.

<u>**JURISDICTION & VENUE**</u>

14.     This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.SC § 1332(d)(2)(A), because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from Walmart's citizenship; and the matter in controversy exceeds $5 million, exclusive of interests and costs.

15.     This Court has personal jurisdiction over Walmart because Walmart operates, conducts, and engages in substantial business in this District, including but not limited to the promotion, sale, marketing and distribution of its Hotel Style Sheets; Walmart committed tortious acts in this State through its misrepresentations related to the sale, marketing, and distribution of its Hotel Style Sheets in this State; Walmart caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Walmart conducts business in this District and has availed itself of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

17.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

**A.    Walmart markets and sells Hotel Style Sheets through its "Hotel Style" brand.**

18.    Walmart operates retail stores throughout the State of California and across the United States. Walmart is a ubiquitous "mass merchandiser of consumer products, operating under the 'Walmart' and 'Walmart Neighborhood Market' brands" with "[U.S.] net sales of $393.2 billion for fiscal [year] 2022."[11]

19.    In the United States, Walmart does business "in three strategic merchandise units," including "[g]rocery," "[g]eneral merchandise," and "[h]ealth and wellness[.]"[12] Walmart's general merchandise category includes "Home" products such as "housewares and small appliances, bed & bath, furniture and home organization, home furnishings, home decor, fabrics and crafts."[13]

20.    Walmart owns, operates, and sells merchandise under a host of "private brands,"[14] and one of Walmart's private brands is the "Hotel Style" brand which it has used to sell merchandise to its consumers since at least 2016. Under the "Hotel Style" brand, Walmart sells bed sheets, bath towels, bath mats, shower curtains, and other assorted bed and bath goods to its customers in California, and throughout the United States.

21.    Walmart sells its Hotel Style Sheets to consumers with a represented thread count of 800 in its retail locations at or around the following prices:

    a.    The "Full" set of Hotel Style Sheets retails for $39.88;

---

[11] SEC Filing Details, 10-K, Walmart (Mar. 18, 2022), https://stock.walmart.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=15671092, at 7.

[12] *Id.*

[13] *Id.*

[14] *Id.*

b.   The "Queen" set of Hotel Style Sheets retails for $49.88; and

c.   The "King" set of Hotel Style Sheets retails for $59.00.[15]

22.   The Hotel Style Sheets are offered for sale in the above three sizes (*i.e.*, Full, Queen, and King) as well as in a number of different colors and patterns.

23.   However, no matter the size, color, and/or pattern of the product, all of the Hotel Style Sheets are all made from the same cotton and polyester blended fabric.

24.   Upon information and belief, the fabric for the Hotel Style Sheets is initially woven into large rolls by a mechanical process. The fabric for the Hotel Style Sheets is then cut from that large roll and the Hotel Style Sheets are then sewn into their specific sizes by a mechanical process. All of the Hotel Style Sheets are manufactured through this process and are made from the same cotton and polyester blended fabric, no matter their size, color, or pattern.

25.   No matter the size, color, and/or pattern, the Hotel Style Sheets' packaging and labeling all represent and warrant that the sheets are 800 thread count (*e.g.*, "800 THREAD COUNT").

26.   Walmart also sells a separate set of Hotel Style branded bedsheets with a "600 Thread Count" representation.[16] However, the "600 Thread Count" Hotel Style sheets are made from a distinct fabric blend: The 600 thread count sheets are made from 100% cotton fabric while the Hotel Style Sheets which are the subject of this action are made from a cotton and polyester blended fabric.

---

[15] The prices listed in Paragraph 21 are the full prices charged for the Hotel Style Sheets, as historically indicated on Walmart's website and currently signaled via strikethrough (*e.g.*, ~~$39.88~~). Recently, those prices were updated to reflect a "Now" price—$31.90 (Full), $39.90 (Queen), and $47.20 (King), but it is not clear whether this reflects a sale or other reason for a downward adjustment. *See Hotel Style 800 Thread Count Cotton Rich Sateen Bed Sheet Set, King, Gray, Set of 6*, Walmart, https://www.walmart.com/ip/Hotel-Style-800-Thread-Count-Cotton-Rich-Sateen-Bed-Sheet-Set-Queen-White-Set-of-6/875488965 (last visited Apr. 3, 2024).

[16] *Hotel Style 600 Thread Count 100% Luxury Cotton Sheet Set, Queen, Grey Pumice,* Walmart, https://www.walmart.com/ip/Hotel-Style-600-Thread-Count-100-Luxury-Cotton-Sheet-Set-Queen-Grey-Pumice/322845772 (last visited Apr. 2, 2024).

27.     Consumers rely on the represented thread count as the gauge for the quality, durability, softness, and fitness of their bedding products. *See* Elisabeth Leamy, *False thread counts, and other things to watch out for when buying sheets*, Wash. Post (Aug. 1, 2017), https://www.washingtonpost.com/lifestyle/home/false-thread-counts-and-other-things-to-watch-out-for-when-buying-sheets/2017/07/31/c090baea-6d58-11e7-b9e2-2056e768a7e5_story.html ("higher thread counts have long been associated with softer sheets").

28.     Additionally, consumers regularly pay more for higher thread count sheets. *See Are Shoppers Short-Sheeted by Thread Count?*, ABC News (Nov. 22, 2002), https://abcnews.go.com/GMA/story?id=125380&page=1 ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [Kathleen] Huddy [textile director for the Good Housekeeping Institute] claims is only a 300-count is $180 a set.").

**B.     Walmart artificially inflates the thread count of its Hotel Style Sheets.**

29.     The common and accepted methodology in the United States' woven fabrics industry for counting threads is to count the number of threads in two directions: (1) the warp (or vertical) direction, and (2) the filling (or horizontal) direction. The sum of each determines the final thread count.

30.     To count the warp and filling threads in a woven fabric and to determine its final thread count, the textile industry widely uses ASTM D3775-17.

31.     ASTM D3775 is a regularly updated standard with updates occurring in 2002, 2003, 2007, 2008, and 2012. The current standard, D3775-17, became effective in 2017.

32.     ASTM International is a globally recognized leader in the development and delivery of voluntary consensus standards. Today, over 12,000 ASTM standards are used around the world to improve product quality, enhance health and safety, strengthen market access and trade, and build

consumer confidence. ASTM International standards are "the tools of customer satisfaction and competitiveness for companies across a wide range of markets."[17]

33.     The thread counting methodology contained in ASTM D3775-17 initially requires that the tester "[c]ount the number of ends and picks in five randomly spaced places diagonally across the width of the laboratory sampling unit." ASTM D3775-17, Sec. 9.1.1.

34.     Section 9.1.3 of ASTM D3775-17 then provides instruction on counting single-ply and multi-ply yarn. The accepted methodology requires: "When two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components."

35.     Previous versions of ASTM D3775 included instructions that required the same methodology for counting single-ply and multi-ply yarn in a woven fabric. ASTM D3775-03 included these instructions: "When two yarns are laid-in together and parallel, then each yarn is counted separately as single units regardless of whether they are comprised of single or plied components." ASTM D3775-03, Section 9.1.4.1. ASTM D3775-12 included these instructions: "When two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." ASTM D3775-12, Section 9.1.2.

36.     Once the counting procedure is finished, ASTM D3775-17 ensures accuracy of the thread count by requiring the tester to calculate a "coefficient of variation" for the five thread count measurements that the tester conducted. ASTM D3775-17, Sec. 9.3.1.1 and 9.3.2.1. For the thread count to be accepted under the ASTM D3775-17 standard, the coefficient of variation for the five counts must be below 5%. *Id.*

---

[17] *Detailed Overview*, ASTM, https://www.astm.org/about/overview/detailed-overview.html (last visited Apr. 2, 2024).

37.     Walmart sells its Hotel Style Sheets with packaging and labeling that represents a substantially higher thread count than was independently measured using the industry standard ASTM D3775-17.

38.     The Federal Trade Commission ("FTC") has determined that this practice is deceptive. In response to a request by the National Textiles Association ("NTA") for a staff opinion "regarding the appropriate way to disclose fabric 'thread count' (yarns per square inch) on labels or in advertising for household textile products, such as bed sheets," the FTC determined that "we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[18]

39.     In reaching this conclusion about the deceptive nature of misleading or false thread count representations, the FTC noted the importance of using and relying upon industry accepted methodologies for determining the applicable thread count:

> A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.[19]

40.     The FTC further concluded in its 2005 opinion letter that consumers should be given accurate and truthful information about a product's thread count and the way in which that thread count was reached:

> Based upon the ASTM standard . . . we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-

---

[18] Letter from James Kohm, Assoc. Dir. for Enf't, U.S. Fed. Trade Comm'n, to E. Linwood Wright, III, Chairman, Textile Bedding Comm., Nat'l Textile Ass'n (Aug. 2, 2005), https://www.idfl.com/wp-content/uploads/2021/05/IDFL_Textiles_-_Thread_Count_FTC_Opinion_Letter.pdf.

[19] *Id.*

deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased."[20]

41.    In 2017, the United States International Trade Commission ("ITC") issued a general exclusion order "prohibiting the entry of certain woven textile fabrics and products containing same that are falsely advertised through a misrepresentation of thread count."[21]

42.    As part of its *Woven Textile* investigation, the ITC found "a widespread pattern of violation of Section 337" because of the importation and sale of "products that have claimed a higher thread count than actually contained in the products per testing performed under the ATSM D3775 standard."[22]

43.    Further, commercial entities and retailers alike use ASTM D3775 as the standard methodology to determine whether products meet their specific thread count representations. As stated by Section 5.1 of ASTM D3775-17: "[t]his test method is considered satisfactory for acceptance testing of commercial shipments because it has been used extensively in the trade for that purpose."

---

[20] *Id.*

[21] The ITC entered an initial determination order recommending entry of a general exclusion order on November 10, 2016. *See In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Inv. No. 337-TA-976, Notice, Dec. 20, 2016, *available at*  https://perma.cc/X2VJ-JA2J. The ITC then entered the General Exclusion Order on March 20, 2017. *See In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Inv. No. 337-TA-976, Notice, Mar. 20, 2017, *available at* https://perma.cc/PED5-B27F.

[22] *Id.*  Additionally, the General Exclusion Order was rescinded by order of the ITC on March 4, 2021, after the original complainant, AAVN, Inc., petitioned for recission of that order. The recission order did not alter the ITC's factual finding of a widespread pattern of importers making false thread count representations on their imported products. Instead, the recission order was based on AAVN's contention that continued enforcement of the order would harm it more than simple recission of the order would. *See In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Investigation No. 337-TA-976 (Rescission), U.S. Int'l Trade Comm'n (Mar. 4, 2021), *available at* https://www.usitc.gov/secretary/fed_reg_notices/337/337_976_notice03042021sgl.pdf.

---

44.    Thus, ASTM D3775 is the standard methodology for counting threads within the textile industry.

45.    Walmart represents that its Hotel Style Sheets are 800 thread count, but when measured in accordance with the industry standard, ASTM D3775-17, the thread count for the Hotel Style Sheets is less than half of the represented amount.

46.    Expert testing of Walmart's Hotel Style Sheets pursuant to the ASTM D3775-17 standard has revealed that the actual thread count of the Hotel Style Sheets was lower than half of the 800 thread count warranted and represented on the Product's packaging and labeling.

47.    Walmart developed the labeling, packaging, and representations for its Hotel Style Sheets, including the specific representation and warranty that the Hotel Style Sheets were 800 thread count (*e.g.*, "800 THREAD COUNT"), which Walmart knew or should have known were false and/or misleading to consumers.

48.    Walmart knew or should have known that its represented thread count for its Hotel Style Sheets is false and misleading, given the accepted industry standard as well as publicity of the same.[23]

49.    In sum, Walmart's representations regarding the thread counts of its Hotel Style Sheets were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

---

[23] *See, e.g.*, Dru Sefton, *Some sheets have inflated thread count*, Seattle Times (Dec. 25, 2005), https://www.seattletimes.com/life/some-sheets-have-inflated-thread-count/ ("Instead of using one count per thread, some [companies] are counting individual yarn plies that make up each thread."); *Higher thread count doesn't guarantee better sheets There's no need to pay high prices for a higher thread count*, Consumer Reps. (Sept. 13, 2013), https://www.consumerreports.org/cro/news/2013/09/higher-thread-count-doesn-t-guarantee-better-sheets/index.htm ("manufacturers use thinner strands of fabric twisted together as if they were one" and then inflate the thread count "to make the number more attractive to the consumer").

50.     Despite this, Walmart sold the Hotel Style Sheets with the inflated thread count in order to obtain more business and sell more products in a competitive market.

51.     By improperly inflating the thread count of its Hotel Style Sheets, Walmart has engaged in a deceptive, unconscionable, and fraudulent practice to induce Plaintiff and the putative class to purchase the Hotel Style Sheets at an inflated price. Had Plaintiff or the putative class members known of the inflated thread count on Walmart's Hotel Style Sheets, they would not have purchased them or would have only paid a lower price for the Product.

**PLAINTIFF'S PURCHASE OF WALMART'S HOTEL STYLE SHEETS**

52.     In or around February 2022, while a resident of Sacramento, California, Plaintiff Vernita Faison purchased Walmart's Hotel Style Sheets from a local Walmart location for approximately $59. The Hotel Style Sheets purchased by Plaintiff Faison include a tag that identifies them as Walmart's "Hotel Style" brand, identifies them as "Queen" sized sheets, and states that they were made from a 53% cotton and 47% polyester blended fabric, just as all Hotel Style Sheets are. The packaging of the Hotel Style Sheets purchased by Plaintiff Faison represented and warranted that the sheets had an 800 thread count. Plaintiff Faison would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had she known that the Product did not have a thread count of 800. Thread count is very important to Plaintiff Faison because she believes higher thread counts sheets are of better quality.

53.     Accordingly, Plaintiff, and all Class members (defined below), lost money as a result of Walmart's omissions and misrepresentations regarding Walmart's Hotel Style Sheets. Alternatively, they did not receive the benefit-of-their-bargain and instead, received a product that was worth far less than the product as was represented.

54.     Moreover, Plaintiff is an average consumer, with no expertise in counting threads of bedsheets, and, thus, is at risk of reasonably, but incorrectly, assuming in the future that Walmart has fixed the thread count representation made on its Hotel Style Sheets or has changed its manufacturing process such that its thread count representation is now correct. Indeed, Plaintiff still desires to buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the future if she believed that Walmart's thread count representations were true. Indeed, if Walmart were to correct its thread count misrepresentation, such as by manufacturing the product in a way that would make the 800 thread count representation true, then Plaintiff would purchase the Hotel Style Sheets in the future. Plaintiff is at risk of future harm because of her inability to rely on the validity of the thread count representation on the Hotel Style Sheets' packaging with any confidence on a going forward basis—despite her desire to purchase bedsheets that contain an 800 thread count.

55.     If Walmart is allowed to continue selling its Hotel Style Sheets with the deceptive and unfair misrepresentation as to its thread count, described herein, reasonable consumers will continue to be induced into purchasing the Product with the reasonable belief that its thread count is 800.

## CLASS ALLEGATIONS

56.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

57.     This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23.

58.     Plaintiff seeks certification of a class (the "Class") that is composed of and defined as follows:

> All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased

Hotel Style Sheets[24] from Defendants Walmart Inc. and/or Wal-Mart Stores, Inc., in a Walmart store located in the State of California.

59.     Excluded from the Class are Walmart's officers and directors and current or former employees of Walmart and their immediate family members, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and staff.

60.     **Ascertainability**. Plaintiff is informed and believes that the identities of members of the Class are ascertainable through Walmart's records.

61.     **Numerosity**. The Class numbers over one-hundred (100) persons and are so numerous that joinder of all members is impracticable. The exact number of members can be readily determined from information in the possession and control of Walmart.

62.     **Commonality and Predominance**. Walmart has engaged in the same conduct regarding all of the other members of the Class. The injuries and damages to these class members also present questions of law and fact that are common to each class member, and that are common to the Class as a whole and will drive the litigation and predominate over any questions affecting only individual class members. Numerous common issues of fact and law exist, including, without limitation:

> a. Whether Walmart's Hotel Style Sheets have a thread count of 800 according to accepted industry standards;
>
> b. Whether Walmart engaged in omissions or misrepresentations regarding the thread count of its Hotel Style Sheets;

---

[24] "Hotel Style Sheets" are the bed sheet sets that Walmart manufactures, labels, distributes, advertises, and sells under its exclusively owned brand name "Hotel Style" at Walmart locations throughout the country, which are made using a cotton and polyester blended fabric, and for which Walmart represents directly on their packaging and/or labeling that their thread count is 800. *See supra* ¶ 2.

c.  Whether Walmart's conduct is likely to deceive an objectively reasonable consumer;

d.  Whether Walmart's omissions and misrepresentations regarding the thread count of its Hotel Style Sheets constitute unfair or deceptive acts or practices in violation of state consumer protection laws;

e.  Whether Walmart has violated and continues to violate the "unlawful" prong of California's Unfair Competition Law by violating California's False Advertising Law, the California Legal Remedies Act, and the Federal Trade Commission Act when it represented to consumers that its Hotel Style Sheets have a thread count of 800;

f.  Whether Walmart has violated and continues to violate the "unfair" prong of California's Unfair Competition Law by falsely representing an inflated thread count on its Hotel Style Sheets;

g.  Whether Walmart has violated and continues to violate the "fraudulent" prong of California's Unfair Competition Law by falsely representing that its Hotel Style Sheets have a thread count of 800;

h.  Whether Walmart represented that its Hotel Style Sheets had characteristics, uses, and/or benefits that they did not have;

i.  Whether Walmart represented that its Hotel Style Sheets were of a particular standard or quality, when they are of another;

j.  Whether Walmart advertised goods or services with intent not to sell them as advertised when it advertised its Hotel Sheets as 800 thread count;

k.  Whether Walmart's direct representation that its Hotel Style Sheets are 800 thread count (*e.g.*, "800 THREAD COUNT") on its packaging and/or labeling constitutes an express warranty;

l.  Whether Walmart has been unjustly enriched;

m.  Whether Plaintiff and the Class members were harmed by Walmart's omissions or misrepresentations regarding the thread count of its Hotel Style Sheets;

n.  Whether Walmart should be required to make restitution to Plaintiff and the Class;

o.  Whether Walmart should be required to pay damages to Plaintiff and the Class; and

p.  Whether exemplary or punitive damages should be assessed against Walmart.

63.  **Typicality**. The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses, and injuries of all those in the Class that she represents, and the claims, defenses, and injuries of each class member are typical of those of all other members in the Class. Plaintiff's claims all arise from Walmart's practice of inflating the thread count of its Hotel Style Sheets on their packaging and/or labeling. This practice is applicable to all Class members.

64.  **Adequacy**. Plaintiff is a member of the Class and will fully and adequately protect and represent the interests of those Class members because there are no conflicts between Plaintiff and those Class members, and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of the Class members. Further, Plaintiff is a member of the Class and will fully and adequately represent the interests of those Class members.

65.  **Superiority**. There are substantial benefits to proceeding as a class action that render proceeding as the Class superior to any alternatives, including that it will provide a realistic means for members of the Class to recover damages; the damages suffered by members of the Class may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous

individual proceedings; many members of the Class may be unaware that they have legal recourse for the conduct alleged herein; and issues common to members of the Class can be effectively managed in a single proceeding. Further, maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein. Individualized litigation presents a potential for inconsistent or contradictory judgments as well as substantial risk of adjudication with respect to individual members of the Class which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Plaintiff knows of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CLAIMS

**FIRST CLAIM FOR RELIEF**
**California's Unfair Competition Law**
**Bus & Prof. Code, §§ 17200 *et seq*.**
**On Behalf of the Class**

66.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

67.    Plaintiff brings this claim on behalf of herself and the Class.

68.    At all times relevant hereto, Walmart's alleged actions constitute a business practice under California law.

69.    The California Unfair Competition Law ("UCL") defines unfair business competition to include "unlawful, unfair or fraudulent" acts or practices, as well as any unfair, deceptive untrue, or misleading advertising. Bus & Prof. Code, § 17200.

**A.    "Unlawful" Prong of the UCL**

70.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

71.    A business act or practice is "unlawful" if it violates any established state or federal law.

72.     As detailed in Plaintiff's Second Claim for Relief, below, Cal. Bus. & Prof. § 17500 (California's False Advertising Law) prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, making untrue or misleading statements in advertising.

73.     Walmart has violated and continues to violate the "unlawful" prong of the UCL by violating California's False Advertising Law. *See* ¶¶ 102-11, *infra*.

74.     As detailed in Plaintiff's Third Claim for Relief, below, Cal. Civ. Code §1770 (California Legal Remedies Act) Section (a)(5) prohibits a business from "[r]epresenting that goods . . . have . . . characteristics, . . . uses, [or] benefits… that they do not have"; Section (a)(7) prohibits a business from representing that its goods are "of a particular standard [or] quality . . . if they are of another"; and Section (a)(9) prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised."

75.     Walmart has violated and continues to violate the "unlawful" prong of the UCL by violating the Consumer Legal Remedies Act ("CLRA"). *See* ¶¶ 112-24, *infra*.

76.     Moreover, the FTC Act prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce, *see* 15 U.S.C. § 45(a)(1), which includes, *inter alia*, false advertising, *see* 16 C.F.R. § 238.2(a) ("No statement . . . should be used in any advertisement which creates a false impression of the grade, quality, make, value . . . of the product offered[.]").

77.     Walmart has violated and continues to violate the FTC Act by misrepresenting on the Products' packaging and/or labeling that the Product has a thread count of 800 when its actual thread count is less than half of the represented amount as well as the omission, suppression, and/or concealment from Plaintiff and the Class of the actual thread count. Walmart has thus also violated and continues to violate the "unlawful" prong of the UCL by violating the FTC Act.

78.     Plaintiff and the Class members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

79.     As a direct and proximate result of Walmart's violations, Plaintiff and the Class members have suffered injury in fact in an amount to be established at trial.

80.     Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court restore this money to Plaintiff and all members of the Class, and disgorge the profits Walmart has made on its Hotel Style Sheets. Plaintiff further seeks an injunction that enjoins Walmart from continuing to violate the UCL by misrepresenting the thread count of its Hotel Style Sheets, as discussed herein.

81.     Plaintiff and the members of the Class have no adequate remedy at law. Legal remedies would not protect Plaintiff and the Class from the continued harm caused by Walmart's misrepresentations about the thread count of the Hotel Style Sheets. Indeed, Plaintiff still desires to buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the future if she believed that Walmart's thread count representations were true. Thus, even if consumers like Plaintiff become aware of Walmart's misrepresentation they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentation has been corrected.

**B.     "Unfair" Prong of the UCL**

82.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

83.     A business act or practice is "unfair" if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged injured party.

84.     Walmart has violated and continues to violate the "unfair" prong of the UCL by falsely representing an inflated thread count on its Hotel Style Sheets.

85.     These acts and practices are unfair because, by misrepresenting and inflating the thread count of the Hotel Style Sheets, they are likely to cause consumers to falsely believe that Walmart is offering a superior product.

86.     The gravity of the harm to Plaintiff and the Class members outweighs any conceivable reasons, justifications, and/or motives of Walmart to overstate and/or inflate the thread count of its Hotel Style Sheets.

87.     Plaintiff and the Class could not have reasonably avoided the injuries suffered because they lack the skill, knowledge, resources, equipment, and opportunity necessary to find the true thread count of the Hotel Style Sheets.

88.     Plaintiff and the Class members would not have purchased the sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

89.     As a direct and proximate result of Walmart's violations, Plaintiff and the Class members have suffered injury in fact in an amount to be established at trial. Plaintiff and the Class paid an excessive price for a product that was inherently different than the product they thought they were buying.

90.     Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this Court restore this money to Plaintiff and all Class members, and disgorge the profits Walmart has made on its Hotel Style Sheets. Plaintiff further seeks an injunction that enjoins Walmart from continuing to violate the UCL by misrepresenting the thread count of its Hotel Style Sheets, as discussed herein.

91.     Plaintiff and the members of the Class have no adequate remedy at law. Legal remedies would not protect Plaintiff and the Class from the continued harm caused by Walmart's misrepresentations about the thread count of the Hotel Style Sheets. Indeed, Plaintiff still desires to

1 | buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the

2 | future if she believed that Walmart's thread count representations were true. Thus, even if consumers

3 | like Plaintiff become aware of Walmart's misrepresentation they are still at risk because they may

4 | reasonably, but incorrectly, assume that the misrepresentation has been corrected.

5 | **C.    "Fraudulent" Prong of the UCL**

6 | 92.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

7 | 93.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive

8 | members of the consuming public.

9 | 94.    Walmart represented that the Hotel Style Sheets had a specific thread count of 800 with

10 | the intention that consumers would rely on those representations when making their purchase.

11 | 95.    Walmart's representation that the Hotel Style Sheets had a thread count of 800 was

12 | false and Walmart either knew or should have known of this falsity.

13 | 96.    Walmart's thread count representation on the packaging and/or labeling of its Hotel

14 | Style Sheets was material to the purchase of the product by Plaintiff and the Class members.

15 | 97.    Walmart's misrepresented thread count on the packaging and/or labeling of the Hotel

16 | Style Sheets was relied upon by Plaintiff and the Class and continues to be relied upon by consumers.

17 | 98.    Plaintiff and the Class members would not have purchased the Hotel Style Sheets, or

18 | alternatively would not have paid a premium for them, had Walmart not misrepresented their thread

19 | count as 800.

20 | 99.    As a direct and proximate result of Walmart's violations, Plaintiff and the Class

21 | members have suffered injury in fact in an amount to be established at trial.

22 | 100.    Through its fraudulent acts and practices, Walmart has obtained, and continues to

23 | unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court restore

this money to Plaintiff and all Class members, and disgorge the profits Walmart has made on its Hotel Style Sheets. Plaintiff further seeks an injunction that enjoins Walmart from continuing to violate the UCL by misrepresenting the thread count of its Hotel Style Sheets, as discussed herein.

101.    Plaintiff and the members of the Class have no adequate remedy at law. Legal remedies would not protect Plaintiff and the Class from the continued harm caused by Walmart's misrepresentations about the thread count of the Hotel Style Sheets. Indeed, Plaintiff still desires to buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the future if she believed that Walmart's thread count representations were true. Thus, even if consumers like Plaintiff become aware of Walmart's misrepresentation they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentation has been corrected.

**SECOND CLAIM FOR RELIEF**
**California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**On Behalf of the Class**

102.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

103.    Plaintiff brings this claim on behalf of herself and the Class.

104.    California's False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising.

105.    Walmart has offered for sale the Hotel Style Sheets with a deceptive, false, and/or misleading representation on the Product's packaging and/or labeling that the Product had a thread count of 800 when its actual thread count is less than half of the represented amount.

106.    These deceptive advertisements and product specifications, as described above, were made in the State of California.

107.    Walmart's representation that the Hotel Style Sheets have a thread count of 800 was intended to induce the public to purchase the Product.

108.    Walmart's representation that the Hotel Style Sheets had a thread count of 800 was false and Walmart either knew or should have known of this falsity.

109.    Plaintiff and the Class members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

110.    Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the putative Class. As such, Plaintiff requests that this Court restore this money to her and all Class members, disgorge the profits Walmart has made on its Hotel Style Sheets, and enjoin Walmart from continuing to violate California's False Advertising Law as discussed herein.

111.    Plaintiff and the members of the Class have no adequate remedy at law. Legal remedies would not protect Plaintiff and the Class from the continued harm caused by Walmart's misrepresentations about the thread count of the Hotel Style Sheets. Indeed, Plaintiff still desires to buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the future if she believed that Walmart's thread count representations were true. Thus, even if consumers like Plaintiff become aware of Walmart's misrepresentation they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentation has been corrected.

### THIRD CLAIM FOR RELIEF
#### Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
#### On Behalf of the Class

112.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

113.    Plaintiff brings this claim on behalf of herself and the Class.

114.    At all relevant times hereto, including at all times during the transactions between Plaintiff and Walmart, and the consumer transactions between the Class members and Walmart,

Plaintiff and each of the Class members were consumers, and the transactions were consumer transactions within the meaning of the CLRA.

115.    In connection with the consumer transactions alleged herein, including the consumer transaction between Plaintiff and Walmart, and the consumer transactions between the Class members and Walmart, Walmart's representations, acts, and/or practices regarding the represented thread count on the packaging and/or labeling of the Hotel Style Sheets were unfair and deceptive, to wit: Walmart represented on the packaging and/or labeling of the Hotel Style Sheets that the Product contained a thread count of 800 when its actual thread count was less than half of the represented amount.

116.    Walmart's deceptive representation was material to the consumer transactions between Plaintiff and Walmart, as well as between the Class members and Walmart.

117.    Plaintiff and the Class members would not have purchased the sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

118.    As a result of the conduct described herein, Walmart has engaged in unfair and deceptive sales practices in violation of the CLRA, to wit:

    a.    Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was less than half of that represented amount, was thus representing that its goods had characteristics, uses, and/or benefits that they did not have, which is a violation of CLRA §1770(a)(5);

    b.    Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was less than half of that represented amount, was thus representing that its Hotel Style Sheets were of a particular standard or quality, when they are of another, which is a violation of CLRA §1770(a)(7); and

    c.    Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was less than half of that represented amount, was thus advertising goods or services with intent not to sell them as advertised, which is a violation of CLRA §1770(a)(9).

119.    Pursuant to Section 1782 of the Act, Plaintiff sent notification on July 7, 2023, a true and correct copy of which is attached hereto as **Exhibit A**, to Defendants in writing by certified mail

1    of her claim under the CLRA and demanded that Defendants cease the above-described misconduct

2    and agree to compensate consumers who purchased the Hotel Style Sheets for the monetary difference

3    between the Hotel Style Sheets as warranted and as sold.

4        120.    Pursuant to Section 1780(d) of the Act, attached hereto as **Exhibit B** is an affidavit of

5    Plaintiff showing that this action has been commenced in the proper forum.

6        121.    The notice period having run since Plaintiff's counsel previously sent notification as

7    required by the CLRA, Plaintiff now seeks restitution and actual, statutory, and punitive damages as

8    appropriate because Walmart has not rectified the notified issues within 30 days of the date of written

9    notice pursuant to Section 1782 of the Act.

10       122.    As a direct and proximate result of Walmart's violations, Plaintiff and the Class

11   members have suffered injury in fact in an amount to be established at trial. Through its unlawful acts

12   and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the

13   Class.

14       123.    Therefore, Plaintiff, on behalf of the Class, seeks all damages permitted by the CLRA

15   including restitution, compensatory damages, statutory damages, punitive damages in an amount

16   adequate to deter such conduct in the future, attorneys' fees, and an order enjoining Walmart from

17   continuing to violate the CLRA, as discussed herein.

18       124.    Plaintiff and the members of the Class have no adequate remedy at law. Legal remedies

19   would not protect Plaintiff and the Class from the continued harm caused by Walmart's

20   misrepresentations about the thread count of the Hotel Style Sheets. Indeed, Plaintiff still desires to

21   buy bedsheets that contain a thread count of 800 and thus would buy the Hotel Style Sheets in the

22   future if she believed that Walmart's thread count representations were true. Thus, even if consumers

23

like Plaintiff become aware of Walmart's misrepresentation they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentation has been corrected.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**On Behalf of the Class[25]**

125.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

126.    Plaintiff brings this claim on behalf of herself and the Class.

127.    Plaintiff, and each member of the putative Class, purchased the Hotel Style Sheets from Walmart.

128.    In connection with those purchases, Walmart made promises and affirmations of fact on the packaging and/or labeling of the Hotel Style Sheets, as alleged above.

129.    Walmart's promises and affirmations of fact made through and represented on its Hotel Style Sheets' packaging and/or labeling constitute express warranties.

130.    The written express warranty on the Product's packaging includes the direct representation that the Hotel Style Sheets are 800 thread count (*e.g.*, "800 THREAD COUNT").

131.    This affirmation of fact made by Walmart was made to induce Plaintiff and the putative Class members to purchase the Hotel Style Sheets.

132.    Alternatively, Walmart's representations, descriptions, and specifications of the quality, durability, longevity, and fitness of their Hotel Style Sheets, namely that the bed sheets were 800 thread count, became part of the basis of the bargain, creating express written warranties that the Products purchased by Plaintiff and the putative Class would conform to those representations, descriptions, and specifications.

---

[25] Plaintiff does not bring a claim for breach of any express warranty under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* Instead, Plaintiff pursues her breach of express warranty claim under the law of California.

133.    Plaintiff and the putative Class members relied on Walmart's affirmation of fact that the Hotel Style Sheets were 800 thread count when purchasing the Product.

134.    Plaintiff and the putative Class members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

135.    All conditions precedent to Walmart's liability under the warranty have been performed by Plaintiff and the putative Class members or have been waived.

136.    Walmart breached the terms of the express warranty because the Products did not conform to the description provided by Walmart, to wit: that the Hotel Style Sheets were 800 thread count.

137.    Plaintiff provided Defendants with written notice of Defendants' breach of the express warranty shortly after Plaintiff discovered the breach by letter, which was sent to Defendants by Plaintiff's counsel by certified mail on or around July 7, 2023.

138.    Plaintiff and the members of the putative Class were injured as a result of Walmart's breach of their express warranties about the Hotel Style Sheets.

139.    As a result of the foregoing, Plaintiff and the putative Class members have suffered damages in that the value of the Hotel Style Sheets that they purchased was less than warranted by Walmart.

140.    Plaintiff and the members of the Class seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**FIFTH CLAIM FOR RELIEF**
**Common Law Fraud**
**On Behalf of the Class**

141.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

142.    Plaintiff brings this claim on behalf of herself and the Class.

143.    Walmart represented to Plaintiff and all putative Class members on the Hotel Style Sheets' labeling and/or packaging that the Hotel Style Sheets had a thread count of 800 when the actual thread count was less than half of the represented amount.

144.    Walmart knew, or should have known, that the misrepresentation alleged herein was false at the time it made the misrepresentation and/or it acted recklessly in making such a misrepresentation.

145.    Walmart's misrepresentation of the thread count on its Hotel Style Sheets' labeling and/or packaging was material to consumers because the representation was directly relevant to the value and quality of the Products.

146.    Walmart intended that Plaintiff and the putative Class members rely on the misrepresentations alleged herein and purchase the Hotel Style Sheets.

147.    Plaintiff and the putative Class members reasonably and justifiably relied on Walmart's misrepresentations when purchasing the Hotel Style Sheets, were unaware of the existence of facts that Walmart suppressed and failed to disclose, and, had the facts been known, would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

148.    Plaintiff and the putative Class members seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**SIXTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**On Behalf of the Class**

149.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

150.    Plaintiff brings this claim on behalf of herself and the Class.

151.    Walmart, directly or through its agents and employees, falsely represented that the Hotel Style Sheets were 800 thread count when the actual thread count was less than half of the represented amount.

152.    Walmart's misrepresentation related to the thread count of the Hotel Style Sheets was a misrepresentation of a material fact made directly to Plaintiff and the putative Class on the Product's packaging and/or labeling, as described above.

153.    Walmart had no reasonable grounds for believing these representations to be true when it made them.

154.    In making these representations, Walmart intended to induce the reliance of Plaintiff and the putative Class members.

155.    Plaintiff and the putative Class members reasonably and justifiably relied on Walmart's misrepresentations when purchasing the Products and, had the facts been known, they would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

156.    As a direct and proximate result of Walmart's negligent misrepresentations, Plaintiff and the putative Class members have been damaged in an amount to be established at trial including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

1
2

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### On Behalf of the Class

3     157.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

4     158.    Plaintiff brings this claim on behalf of herself and the Class.

5     159.    This claim asserts that it is unjust to allow Walmart to retain profits from its deceptive,

6 misleading, and unlawful conduct alleged herein.

7     160.    Walmart charged Plaintiff and the putative Class members for the Hotel Style Sheets

8 that Walmart represented were 800 thread count.

9     161.    As detailed above, the Hotel Style Sheets do not have a thread count of 800 and, instead,

10 have a thread count that is less than half of the represented amount.

11    162.    Plaintiff and the putative Class members would not have purchased the Hotel Style

12 Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented

13 their thread count as 800.

14    163.    Because the Hotel Style Sheets misrepresented their thread count, Walmart collected

15 profit for this misrepresentation.

16    164.    As a result of these actions, Walmart received benefits under circumstances where it

17 would be unjust to retain these benefits.

18    165.    Walmart has knowledge or an appreciation of the benefit conferred upon it by Plaintiff

19 and the putative Class members.

20    166.    Walmart has been unjustly enriched.

21    167.    Plaintiff and the putative Class members are entitled to restitution and/or disgorgement

22 of all profits, benefits, and other compensation obtained and retained by Walmart from its unlawful

23

conduct including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE** Plaintiff demands judgment as follows:

1.     For an Order determining at the earliest possible time that this matter may proceed as a class action under Federal Rule of Civil Procedure 23 and certifying this case as such;

2.     For compensatory damages, statutory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

3.     For punitive damages pursuant to common law and/or statutory law;

4.     For reasonable costs and attorneys' fees necessarily incurred herein pursuant to common law and/or statutory law;

5.     For trial by jury on all issues; and

6.     For such other or further relief as this Honorable Court deems Plaintiff and the putative Class are entitled.

Date: April 5, 2024

*/s/ Annick M. Persinger*
Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Andrea R. Gold (*pro hac vice* to be filed)
*agold@tzlegal.com*
Leora N. Friedman (*pro hac vice* to be filed)
*lfriedman@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Frank Bartela (OH Bar #0088128)*
*fbartela@dworkenlaw.com*
Nicole T. Fiorelli (OH Bar #0079204)*
*nfiorelli@dworkenlaw.com*
**DWORKEN & BERNSTEIN**
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391

*\*Pro hac vice application forthcoming*

*Counsel for Plaintiff Vernita Faison*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I certify that on April 5, 2024, I electronically filed the foregoing Class Action Complaint using

3

this Court's CM/ECF service. All counsel of record will be served via the Court's electronic filing

4

system. Parties may access this filing through the Court's system.

5

6

<u>*/s/ Annick M. Persinger*</u>
Annick M. Persinger, Esq.
**TYCKO & ZAVAREEI LLP**

7

*One of the Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23