Cortlin H. Lannin (Bar No. 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-7078
Facsimile: + 1 (415) 591-6091
Email:  clannin@cov.com

*Attorneys for Defendants Walmart Inc. and Wal-Mart Stores, Inc.*

(Additional counsel listed below)

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNITA FAISON, individually and as a representative of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WALMART INC. and WAL-MART STORES, INC.,<br><br>    Defendants. | Civil Case No.: 2:24-cv-01024-DJC (CSK)<br><br>**STIPULATED PRODUCTION PROTOCOL**<br><br>District Judge:  Hon. Daniel J. Calabretta<br>Magistrate Judge:  Hon. Chi Soo Kim |

The Parties agree to the following Stipulated Production Protocol ("Protocol") for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and subject to the Parties' **Stipulated Protective Order**.

## General Provisions

1. As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing

documents in response to the request of Requesting Party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

2. This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. This Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3. Nothing in this Protocol shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

4. Nothing in this protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

5. This Protocol is consistent with Fed. R. Civ. P. 26(b)(1) and limits the scope of discovery to any non-privileged data that is relevant to any Party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing in this protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1).

6. The Parties agree not to intentionally degrade the searchability of documents as part of the document production process.

**Preservation**

7. Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control. Nothing in this protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under

Fed. R. Civ. 26(b)(1). The parties have considered their preservation obligations and agree that preservation of relevant ESI will be reasonable and proportionate.

**Phasing**

8.  When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer to phase the production of ESI, if appropriate, by prioritizing selected sources and/or custodians.

**Documents from hard copy sources**

9.  The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text (or searchable PDF if production format dictates), along with the below-listed fielded data when available. The Parties will provide a standardized load file compatible with Concordance or Opticon and with a Bates number field included in the load file to match text and fielded data with TIFF images. With respect to Hard Copy Documents, data on the load file will include:

   a. Beginning Document Bates Number
   b. Ending Document Bates Number
   c. Beginning Family Bates Number (begins with 1st page of parent)
   d. Ending Family Bates Number
   e. Custodian or Source
   f. Confidentiality Designation
   g. Page Count
   h. Redaction (Y/N)
   i. Text File Path, including filename and extension (.txt)

**Electronically Stored Information**

Discovery of ESI shall proceed as follows:

10. The Producing Party shall conduct a reasonable and good faith search for documents and ESI that are subject to production under the Federal Rules of Civil Procedure. The Parties agree that after the entry of this ESI Protocol, they will meet and confer regarding appropriate search protocols to be used for locating responsive ESI in this litigation, including without limitation: (1) the data sources and custodians each party believes should be searched,

(2) appropriate search terms (keywords, terms, or phrases), (3) the date or time range for the search(es), and (4) any predictive coding or technology assisted review tools that the Producing Party intends to employ. Specifically:

    a. Within 30 days after service of responses to requests for production (or within 30 days of service of an interrogatory answer stating that the Producing Party will produce documents under Fed. R. Civ. P. 33(d)), the Producing Party shall provide to the Receiving Party a list of custodians and non-custodial sources (i.e., data sources) whose files are to be searched for documents, along with a brief description of why that custodial or non-custodial source appears on the list. The description shall include the custodian's current job title, prior relevant job titles, a brief description of the responsibilities for each relevant job title, and the employment period for each relevant job title. The Parties shall meet and confer regarding the identified list of custodians and non-custodial sources prior to any search run in accordance with subparagraph 10(b), below. Further, if the Receiving Party requests to add or subtract custodial or non-custodial sources to this list, the parties shall meet-and-confer and attempt to mutually agree upon custodians and non-custodial sources reasonably tailored to return documents responsive to the discovery requests at issue. For avoidance of doubt, by entertaining a request to add a custodial or non-custodial source, the Producing Party is not necessarily agreeing to add the source.

    b. Within 30 days after service of responses to requests for production (or within 30 days of service of an interrogatory answer stating that the Producing Party will produce documents under Fed. R. Civ. P. 33(d)), the Producing Party shall provide to the Receiving Party a list of search terms, if any, it believes are appropriate to search and collect relevant and/or responsive ESI, then

      i. the Requesting Party shall be permitted to propose additional reasonably tailored search terms to help identify relevant information in response to the Requesting Party's RFPs,

      ii. the Parties shall then meet and confer to discuss the search terms proposed by each and to agree upon the search terms, if any, that will be run by the Producing Party,

      iii. the Producing Party shall then run all reasonably tailored search terms as agreed upon by the Parties pursuant to their meet and confer, and

      iv. if the Producing Party deems that the Requesting Party's search terms return an unreasonable number of hit documents, the Producing Party shall inform the Requesting Party, the Producing Party shall further provide a hit count report showing the results of that search (specifically the total number of documents and the total number of documents with families that were hit by each search term or string), and the Requesting Party shall be given an opportunity to revise the search terms accordingly.

c. The parties may undertake the above process more than once should new search terms or custodians become relevant as the case develops, including by request of the Receiving Party. Additionally, the foregoing process is meant to address not only initial discovery requests, but subsequent ones as well. Therefore, the Parties agree to implement this process and thus meet and confer about additional search terms, custodians, and non-custodial sources additional times as reasonably necessary to address additional discovery requests throughout the litigation process, including by request of the Receiving Party. For avoidance of doubt, by agreeing to undertake this process more than once if appropriate, neither Party is agreeing that they *will* add additional search terms, custodians, and non-custodial sources, only that they will follow the above process for consideration of such a request.

Nothing in this ESI Protocol shall be construed or interpreted as precluding the Producing Party from performing a responsiveness or privilege review to determine if documents collected or captured by search terms are relevant to the Requesting Party's request and discoverable. The Producing Party need not produce all documents captured by any search term if that document is in good faith and reasonably deemed not responsive to the Requesting Party's request, subject to objection, or otherwise privileged.

11. Except as otherwise stated herein, the Parties will produce documents originating as ESI, or kept as such in the ordinary course, in TIFF format with extracted text (or searchable PDF if production format dictates), along with the below-listed metadata fields when available. The Parties will take reasonable steps to preserve, to the extent they have a populated value all metadata associated with ESI even if such metadata is not specified above for production. The Parties will provide a standardized load file compatible with Concordance or Opticon and with a Bates number field included on the load file to match text and metadata with TIFF images. With respect to ESI, data on the load file will include:

- a. Beginning Document Bates Number
- b. Ending Document Bates Number
- c. Beginning Family Bates Number (begins with 1st page of parent)
- d. Ending Family Bates Number
- e. Custodian or Source
- f. All Custodians
- g. Duplicate Custodians
- h. Confidentiality Designation
- i. Page Count
- j. Redaction (Y/N)
- k. Document Date (if available)
- l. Date Modified (last modification date, if available)
- m. File Name (including extension)
- n. File Extension
- o. Document Type
- p. Author (any value populated in the Author field of the document properties)
- q. Email From
- r. Email To
- s. Email CC
- t. Email BCC
- u. Email Subject

    v.  Email Date Received
    w.  Email Time Received
    x.  Email Date Sent
    y.  Email Time Sent
    z.  Attachment count (number of attachments to an email)
    aa.  UTC Time Zone (ESI for all custodians will use UTC time zone)
    bb.  File Size
    cc.  MD5 Hash Values (or alternatively agreed upon Hash Standard)
    dd.  Text File Path, including filename and extension (.txt)
    ee.  Native File Path, including filename and extension.

  12.  The Parties may redact (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law, or regulation (*e.g.*, protected personal information); and (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information regarding products, data, or people, within documents that contain relevant information.

  13.  The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production format dictates; or in native format for file types that do not convert well to TIFF/PDF, such as Excel files) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

  14.  The Parties will produce relevant spreadsheets (*e.g.*, Microsoft Excel) not requiring redaction in native format. For Excel spreadsheets requiring redaction, the Parties shall meet and confer regarding native Excel redaction verses redaction applied to converted TIFF images (or in searchable PDF if production format dictates). At any time, the Parties may consider whether the information contained in Excel spreadsheets is available and should be produced from a structured data source from which the Excel spreadsheets are generated.

  15.  The Parties will produce slide shows (*e.g.*, Microsoft PowerPoint presentations) not requiring redaction in native format. Slide shows requiring redaction will be produced as TIFF images with corresponding searchable OCR text (or in searchable PDF if production format dictates) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

16. The Parties will produce in native format those documents and ESI that do not convert well to TIFF images (in addition to Excel and Power Point, *e.g.*, oversized drawings, picture files, and audio and video files), or will ask the Receiving Party to meet and confer regarding a reasonable alternative form of production. The Parties will produce in black and white. The Parties should meet and confer regarding production of color images when format available.

17. The file name for the documents produced in native format will consist of a Bates number and a confidentiality designation if available. The Parties will provide a corresponding placeholder TIFF image (or PDF if production format dictates) for native files included in a production bearing a sequential BATES number within the family BATES range.

18. The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity in accordance with the Eastern District of California's discovery rules. The Parties will not produce non-relevant attachments that are attached to relevant emails. When an attachment is withheld, either for privilege or non-responsiveness, the Producing Party shall produce a one-page TIFF image (or PDF if production format dictates) in place of the withheld attachment, correspondingly stating "Attachment Withheld-Privileged" or "Attachment Withheld-Nonresponsive", and bearing a sequential BATES number within the family BATES range.

19. Within 45 days of the conclusion of all document productions, the Producing Party will produce a privilege log in PDF format (or Microsoft Excel) indicating the documents withheld from production and the basis for the claim of privilege. The privilege log must be detailed enough to enable other parties to assess the applicability of the privilege asserted and should include: (1) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document and any attachments; (3) the type of document; (4) the Bates numbers of the documents; (5) the nature of the privilege asserted; and (6) a description of the subject matter in sufficient detail to

8
STIPULATED PRODUCTION PROTOCOL

determine if legal advice was sought or revealed, or if the document constitutes attorney work product. Additionally, if appropriate, the Parties may agree that certain categories of documents or information may be logged by category rather than individually. For email strings, the Parties may choose to use only one entry on their respective privilege logs to identify withheld emails that contain a string of emails provided, however, that the entry notes the presence of a string, beginning and ending dates, all of the authors and recipients, and a description of all the subject matters discussed. Communications involving outside counsel for the Parties related to this case that post-date the filing of the initial complaint in *Thomas v. Walmart* (i.e., August 10, 2023) need not be placed on a privilege log. Communications that post-date the filing of the complaint that involve in-house counsel, and that were created either (i) to pursue or defend this action, or (ii) to obtain or provide legal advice on issues relevant to any party's claim or defense in this action, need not be placed on a privilege log. Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

20. The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and will produce only a single copy of identical ESI. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families. All custodians of a de-duplicated document must be identified in the "Duplicate Custodians" metadata field specified in Paragraph 11. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. An overlay data file shall be produced after every rolling production to account for updated duplicate custodian information in the Custodian field.

21. Except as otherwise allowed herein, the Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible.

The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.

22. The Parties shall assign a Bates number to individual pages of TIFF documents (or PDF documents) and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document. The Parties will use the following Bates numbering convention:

    a. Defendants: WM-0000001

    b. Plaintiffs: FAISON-0000001

23. The Parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations or the Parties' "clawback" rights and obligations.

24. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this protocol prohibits a Party from seeking relief from this protocol pursuant to the applicable Eastern District of California's discovery rule(s).

25. When documents produced in accordance with this protocol are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents as described herein shall be the copy used unless the image copy is so illegible or unwieldy to make it infeasible to use as a deposition exhibit, in which case the native version may be used. If the native version is used as an exhibit, the record of the deposition must identify the exhibit using its BATES number, and the BATES number shall also be written on any paper or electronic copy of the exhibit. The confidentiality designation of the document shall also be stated on the record of the deposition and shall be written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any document.

26. Each Party will bear the costs to process and review its own documents according to this protocol. Notwithstanding this paragraph, nothing in this Protocol limits or prohibits a

prevailing party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law.

27. Nothing in this protocol shall be construed to affect, modify or amend the Parties' **Agreed Protective Order** submitted to the Court.

28. Nothing in this protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable Eastern District of California's discovery rules.

**Production of Databases and Other Structured Data.**

29. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, including CSV, Excel, or in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form (such as PDF, Excel, or CSV).

30. Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

**Other Data Sources**

31. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**Deficiency Procedure**

32. If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer.

33. If the Parties are unable to resolve their dispute, the Parties will submit the dispute to the Court pursuant to the Local Rules and the Court's standing orders.

**Clawback Provision**

34. The production of privileged or work-product protected documents, ESI, or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.

35. This Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502(d) and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

36. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

37. If the Receiving Party has reason to believe that a produced document or other information may reasonably be subject to a claim of privilege, then the Receiving Party shall immediately sequester the document or information, cease using the document or information and cease using any work product containing the information, and shall inform the Producing Party of the beginning BATES number of the document or, if no BATES number is available, shall otherwise inform the Producing Party of the information.

38. A Producing Party must give written notice to any Receiving Party asserting a claim of privilege, work-product protection, or other ground for reclaiming documents or information (a "clawback request"). After a clawback request is received, the Receiving Party shall immediately sequester the document (if not already sequestered) and shall not review or use that document, or any work product containing information taken from that document, for any purpose. The Parties shall meet and confer regarding any clawback request.

**Final Disposition of ESI**

39. Within sixty-three (63) days of settlement or final adjudication, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each Party or

non-party to whom any materials were produced <u>shall</u>, without further request or direction from the Producing Party, promptly <u>destroy all</u> documents, items or data received including, but not limited to, copies or summaries thereof, in the possession or control of any expert or client employee. The Requesting Party shall provide written certification of destruction to the Producing Party no later than 30 days after the termination of this matter. This provision does not apply to any material either Party or their counsel may retain under Paragraph 15 of the **Stipulated Protective Order**.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

| | |
|---|---|
| /s/ *Cortlin H. Lannin* | /s/ *Frank A. Bartela* |
| _____ | _____ |
| Counsel for: Defendants Walmart Inc. and Wal-Mart Stores, Inc. | Counsel for: Plaintiff Vernita Faison |
| Dated: January 24, 2025 | Dated: January 24, 2025 |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: January 31, 2025                    _____

                                                                                               U.S. MAGISTRATE JUDGE CHI SOO KIM

4, fais1024.24